CURREY v CURREY

Docket No. 52789. Submitted June 11, 1981, at Detroit.—Decided
    September 8, 1981.

    Plaintiff, Prudy Currey, and defendant, Thomas Currey, were
    divorced in the Monroe Circuit Court. Plaintiff was awarded
    custody of the minor child and defendant received reasonable
    rights of visitation. Defendant moved for an order changing
    custody. The trial court entered a temporary order changing
    custody from plaintiff to defendant and set a date for a hearing
    to determine the issue of custody. At the hearing, plaintiff's
    counsel appeared but plaintiff did not. At the conclusion of the
    hearing, the court, James J. Kelley, J., stated its findings of
    fact and conclusions of law on the record and determined that
    by clear and convincing evidence it was in the best interests of
    the child to grant custody to defendant. Plaintiff appealed.
    *Held:*

    A trial court's adjudication of child custody will be affirmed
    on appeal unless the trial judge made findings of fact against
    the great weight of evidence or committed a palpable abuse of
    discretion or clear legal error on a major issue. The trial court's
    findings were not against the great weight of the evidence, nor
    did it commit a palpable abuse of discretion or clear legal error.
    Affirmed.

1. PARENT AND CHILD — CHILD CUSTODY.
    The best interest of the child controls in a dispute between
    parents over custody (MCL 722.24; MSA 25.312[5]).

2. TRIAL — CHILD CUSTODY — APPEAL — COURT RULES.
    A court rule provides that the court make definite findings of fact
    and conclusions of law in a child custody case; failure to do so
    is reversible error (GCR 1963, 517.1).

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation § 783 *et seq.*
[2] 24 Am Jur 2d, Divorce and Separation §§ 791, 811, 812.
[3] 4 Am Jur 2d, Appeal and Error § 136.

3. Appeal — Child Custody.

All orders and judgments of a circuit court made in a child custody dispute shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion, or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

*Denis W. Budds,* for plaintiff.

*James H. Davies,* for defendant.

Before: D. C. Riley, P.J., and Cynar and H. R. Gage,* JJ.

Per Curiam. Plaintiff appeals of right the trial court's order of June 6, 1980, granting defendant's petition for change of custody of the parties' minor child, born March 16, 1972. We affirm.

Plaintiff, Prudy Currey, filed for divorce on August 17, 1979. The divorce proceeding was not contested by the defendant, Thomas Currey. Plaintiff sought and was awarded, with consent of defendant, temporary custody of the child, Casey, on September 7, 1979. The parties signed a property settlement on January 15, 1980, which included an agreement to give legal custody of the minor child to the wife, subject to the husband's right of visitation, and subject to the order of a court of competent jurisdiction. A default judgment of divorce was entered in favor of the plaintiff on February 25, 1980. Plaintiff was awarded custody of the minor child and defendant received reasonable rights of visitation. The divorce judgment provided: "The domicile of the minor child mentioned herein shall not be removed from the State of Michigan without the prior written consent of the court".

On March 19, 1980, defendant filed a motion for

* Circuit judge, sitting on the Court of Appeals by assignment.

an *ex parte* order changing custody, alleging plaintiff threatened to leave the state with the child without prior approval of the court, that it was defendant's belief that plaintiff was going to move with the child and live out of wedlock with a male friend in Louisiana, and that it was defendant's belief that plaintiff had requested the child's school records be transferred to a location as yet unknown. Plaintiff's answer denied defendant's assertions and beliefs. The court granted an *ex parte* order changing custody from plaintiff to defendant and set a hearing for March 21, 1980.

At the hearing on March 21, 1980, both parties were represented by counsel. On the day of the hearing, defendant filed a motion for permanent change of custody together with an affidavit of Susan Kull, teacher of Casey, stating that on March 18, 1980, she had received a note informing her that "tomorrow will be Casey's last day of school", signed by plaintiff. To further support defendant's belief that plaintiff was going to remove Casey from the state without allowing for visitation or getting prior court. consent, defendant's attorney stated that John Miller, principal at the school, reported that on March 15, 1980, plaintiff met with Casey's teacher and informed her that she was leaving the state in a few days and attempted to obtain the school records and wanted to know the procedure for getting the records transferred. Further, it was said that plaintiff quit her job and had other potential job possibilities in Louisiana. Defendant also claimed that plaintiff threatened to leave the state without allowing for visitation and without court approval.

The trial court entered a temporary order changing custody from plaintiff to defendant and set a hearing to determine the issue of custody for

May 8, 1980. Plaintiff filed a petition to remove the minor child from Michigan on March 31, 1980.

On April 7, 1980, defendant filed a motion for immediate surrender of the child and suspension of child support pending a hearing, asserting that since the hearing of March 21, 1980, temporary custody of the child had been with defendant, that on March 31, 1980, the child was removed from her school by a person believed to be the plaintiff, and that defendant believed that plaintiff had left Michigan with the child with the intent to remove the child from the jurisdiction of the court and from the custody of defendant.

On May 2, 1980, a hearing was held on defendant's motion. Plaintiff was not present but was represented by her attorney. Defendant's motion was granted by order filed May 7, 1980.

Defendant's petition for change of custody was heard on May 8, 1980. Defendant and his counsel were present. Plaintiff's counsel appeared, but plaintiff did not.

Defendant testified that Casey had lived in Monroe County all of her life, that substantially all immediate and close relatives are in Monroe County, that her close friends are in Monroe County, that she had been in the same school since she began school, and that she has had the same doctor all of her life. Defendant stated that he had arranged for plaintiff and Casey to remain in the marital home after the divorce, but plaintiff sold the home before the divorce decree was granted. Plaintiff and the child moved from a three-bedroom home into a three-bedroom trailer, with two other people, and had to share a bedroom. Defendant said he first heard of a possible move from his daughter on March 5, 1980, and then was told by plaintiff that he had to go along with it or she

would just leave and he would never see either of them again. On March 20, 1980, he called his wife at work and found that she had quit.

Plaintiff's counsel stated that plaintiff would not appear in court and refused to answer the petition for change in custody because she denied that there was any basis for a change. He also asserted her petition to change domicile.

On cross-examination, defendant admitted that he approved the September 7, 1979, temporary order of custody and the February 25, 1980, default judgment of divorce, granting custody to plaintiff. Further, he did not object to the Friend of the Court's recommendation that plaintiff be given permanent custody. Defendant stated that he had never lived alone with Casey, but of some 30 months of marriage, before the separation in March 1979, he lived away from her approximately 11 to 12 months. He did not pay child support during the separation but made house payments. Plaintiff had discussed the possibility of splitting the expense of visitations if she and the child moved, but defendant objected to any move. It was plaintiff who usually took Casey to the doctor and provided her with clothing and personal items. Both plaintiff and defendant took part in school matters and both have close emotional relationships with Casey. Defendant agreed that plaintiff took good care of the child and she was not neglected as to food, clothing, and medical care. Casey was doing well in school.

On redirect examination, defendant's attorney was allowed to question defendant regarding conversations he had had with Casey about people plaintiff had been associating with. Plaintiff's counsel's hearsay objection was overruled, as the court stated that the conversations would indicate

the frame of mind of the child. Defendant testified that Casey mentioned a man who worked with plaintiff. After being asked, "Do you feel that there are some ways your ex-wife did neglect the child?", defendant responded, "I don't feel she spent a great deal of time with her after our separation and divorce". Defendant then answered "yes" to a series of leading questions which asserted that plaintiff considered her employment more important than her child.

When examined by plaintiff's counsel, defendant agreed that he had consented to giving plaintiff custody of Casey, notwithstanding his knowledge of the man Casey had mentioned who worked with plaintiff. Although he and plaintiff had never discussed any relocation, they did talk about her job being important.

On questioning by the court, defendant testified that the only knowledge he had of his wife's associating with some other man during their marriage was what he had been told. When he tried to discuss the situation with her, she said it was not his concern. He objected to Casey being taken to an R-rated movie sometime in January or February before the divorce.

Defendant also testified that he had lived in Monroe County all his life and had a position at the bank making $19,500 a year. Visitations were every other weekend on Saturday from 9 a.m. until 7 p.m. on Sunday. On alternate weekends he had Casey on Sunday from 9:30 a.m. until about 7:30 p.m. No specific visitation hours were written in the divorce judgment. Casey was going to play softball that summer and she was in Blue Birds for a short period of time. Defendant was living with his parents in their four-bedroom home. The Friend of the Court filed a report regarding the

Currey home and approved it as an appropriate place for Casey to live. Mrs. Melvin Currey testified that she and her husband would be willing to have her son and granddaughter live with them.

At the conclusion of defendant's testimony the trial judge stated his findings of fact and conclusions of law for the record. Based upon the ten factors of MCL 722.23; MSA 25.312(3), the judge determined that by clear and convincing evidence it was in the best interests of the minor child to grant defendant custody. Defendant agreed to pay the expenses of getting the child back to Michigan. The court directed that a transcript and copy of the order be sent to the proper jurisdiction in Louisiana. The trial court's order changing custody from plaintiff to defendant was filed June 6, 1980. Plaintiff had filed a motion for a new hearing on May 28, 1980, which was denied by the trial court on July 11, 1980.

In a custody dispute between parents, the best interests of the child control. MCL 722.25; MSA 25.312(5), *Berman v Berman,* 84 Mich App 740; 270 NW2d 680 (1978), *Zawisa v Zawisa,* 61 Mich App 1; 232 NW2d 275 (1975). "Best interests of the child" is defined in MCL 722.23; MSA 25.312(3), which enumerates ten factors to be considered.

Before issuing a custody order, the trial court must evaluate and state a conclusion as to each of the factors contained in MCL 722.23; MSA 25.312(3). *Dowd v Dowd,* 97 Mich App 276; 293 NW2d 797 (1980), *Troxler v Troxler,* 87 Mich App 520; 274 NW2d 835 (1978). Furthermore, the trial court is required by GCR 1963, 517.1 to make definite findings of fact and to state its conclusions of law. This duty extends to the determination and explicit consideration of each of the best interest factors listed in the statute. *Lewis v Lewis,* 73

Mich App 563; 252 NW2d 237 (1977). Failure to make specific findings is reversible error. *Zawisa v Zawisa, supra.*

The trial court's authority to modify previous custody orders is governed by MCL 722.27; MSA 25.312(7), as follows:

"Sec. 7. If a child custody dispute has been submitted to a circuit court as an original action under this act or has arisen incidentally from other actions therein or orders or judgments thereof, for the best interests of the child the court may:

*   *   *

"(c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches the age of 18 years or in exceptional circumstances, until the child reaches majority. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life and parental comfort. The age of the child, the physical environment and the inclination of the custodian and the child as to permanency of the relationship shall also be considered."

See also *Adams v Adams,* 100 Mich App 1; 298 NW2d 871 (1980), *Cooper v Cooper,* 93 Mich App 220; 285 NW2d 819 (1979), *Eigner v Eigner,* 79 Mich App 189; 261 NW2d 254 (1977).

To lend finality to the trial court's determination, this Court's review of child custody matters is limited by MCL 722.28; MSA 25.312(8).

"To expedite the resolution of a child custody dispute

by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or clear legal error on a major issue."

See also *Stevens v Stevens,* 86 Mich App 258; 273 NW2d 490 (1978), *Feldman v Feldman,* 55 Mich App 147; 222 NW2d 2 (1974).

Child custody cases are considered *de novo* and the evidence appraised apart from the trial judge's findings of fact. *Bahr v Bahr,* 60 Mich App 354; 230 NW2d 430 (1975), *lv den* 394 Mich 794 (1975), *Outcalt v Outcalt,* 40 Mich App 392; 198 NW2d 779 (1972). Although special deference is given to the findings of the trial court, *Becker v Becker,* 95 Mich App 370; 290 NW2d 149 (1980), the welfare of the child is paramount to all other considerations. *Lamky v Lamky,* 29 Mich App 17; 185 NW2d 203 (1970).

Plaintiff had notice of the hearing set on the motion for change of custody. However, plaintiff chose to absent herself and the child from the jurisdiction. Because of plaintiff's actions, the trial court had to decide defendant's petition to change custody solely on evidence produced on behalf of the defendant.

The court recognized its duty to consider and weigh the proofs concerned with the ten best interest factors under the statute. After doing so, the trial court made specific findings concerning each factor. Our review of the record persuades us that the trial court did not abuse its discretion in finding that defendant presented clear and convincing evidence to support a change of custody.

Affirmed with costs.