BEDNARSKI v BEDNARSKI

Docket No. 74532. Submitted June 8, 1984, at Lansing.—Decided
    February 20, 1985.

    Plaintiff, John A. Bednarski, brought an action in the Genesee
        Circuit Court seeking a judgment of divorce from defendant,
        Vicky L. Bednarski. The plaintiff and defendant are deaf and
        unable to speak. Their minor son and daughter as well as John
        Bednarski's parents have normal hearing ability. A temporary
        order of the court awarded joint custody of the minor children
        to both parents and further awarded the physical custody of
        the son to plaintiff and physical custody of the daughter to the
        defendant. Following trial, the trial court, Judith A. Fullerton,
        J., entered an order granting a divorce while awarding sole

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 75 Am Jur 2d, Trial § 57.
    Right of accused to have evidence or court proceedings interpreted.
        36 ALR3d 276.
[4] 81 Am Jur 2d, Witnesses § 413.
[5] 5 Am Jur 2d, Appeal and Error § 703.
    42 Am Jur 2d, Infants §§ 43, 56.
[6] 24 Am Jur 2d, Divorce and Separation § 974 et seq.
    42 Am Jur 2d, Infants §§ 28 et seq., 43, 56.
    59 Am Jur 2d, Parent and Child § 25.
[7] 24 Am Jur 2d, Divorce and Separation § 979.
    42 Am Jur 2d, Infants § 42.
[8] 24 Am Jur 2d, Divorce and Separation § 979.
    59 Am Jur 2d, Parent and Child § 26.
    Award of custody where contest is between child's parents and
        grandparents. 31 ALR3d 1187.
    Award of custody of child where contest is between child's mother
        and grandparent. 29 ALR3d 366.
[9] 24 Am Jur 2d, Divorce and Separation § 1003 et seq.
    42 Am Jur 2d, Infants § 57.
    59 Am Jur 2d, Parent and Child § 44.
[10] 24 Am Jur 2d, Divorce and Separation § 974.
    42 Am Jur 2d, Infants § 51.
    Parent's disability or handicap as factor in custody award or
        proceedings. 3 ALR4th 1044.

physical and legal custody of the children to their paternal grandparents. Defendant appeals. *Held:*

1. Defendant is entitled to a trial which complies with the Deaf Persons' Interpreters Act. The record indicates that the trial court did not comply with the act since only one interpreter was used to communicate the questions and answers of the plaintiff, defendant and four other deaf persons who testified at trial. The interpreter did not interpret the proceedings to the deaf persons or assist the deaf parties in the preparation of the action, as required by the act. The custody order is vacated and the case is remanded for a new trial.

2. The Deaf Persons' Interpreters Act requires, under the circumstances of this case, the appointment of an interpreter for each plaintiff and defendant, and a third interpreter for the court, if necessary. The interpreters should be appointed well in advance of trial so as to enable their full assistance in preparation of the action.

3. The record should affirmatively disclose on retrial that a preliminary determination was made that the interpreter is able to readily communicate with the deaf person and to interpret the proceedings in which the deaf person is involved.

4. There was little evidence of the defendant's immorality and certainly not enough to justify weighing the morality factor in favor of the grandparents in determining the best interests of the children.

5. The trial court's failure to consider the statutory presumption that the best interests of the children are served by awarding custody to the parent in a dispute between the parent and a third party, unless there is clear and convincing evidence to the contrary, was reversible error.

6. The trial court erred in failing to find that the defendant had established a custodial environment for her daughter and in not applying a clear and convincing evidentiary standard to determine whether a change of custody was in the daughter's best interst.

7. The trial court inappropriately weighed the fact of defendant's deafness against the defendant in determining the custody of the children. Alternative means were available to teach the children communication skills without removing them from their mother's custody.

8. The record does not contain clear and convincing evidence that it was in the daughter's best interest to remove her from the custody of the defendant. The evidence indicates that it was not necessarily an abuse of discretion to award custody of the son to his grandparents, however, because of the the unfairness

of the trial, a new trial is to be held to determine custody of both children. The trial should be held before a different trial judge and additional evidence concerning the past year may be introduced.

Reversed and remanded.

1. WITNESSES — DEAF PERSONS' INTERPRETERS ACT — INTERPRETER'S FUNCTIONS.

The Deaf Persons' Interpreters Act provides for the mandatory appointment of an interpreter in any action before a court or a grand jury where a deaf person is a participant in the action, either as a plaintiff, defendant or witness; the interpreter's functions are: (1) to interpret the proceedings to the deaf person, (2) to interpret the deaf person's testimony or statements, and (3) to assist in the preparation of the action with the deaf person (MCL 393.503[1]; MSA 17.55[103][1]).

2. WITNESSES — DEAF PERSONS' INTERPRETERS ACT — WAIVER.

The Deaf Persons' Interpreters Act provides that an appointing authority who knows that a deaf person will be coming before it is obligated to inform the deaf person of the right to an interpreter; any waiver of the right to an interpreter must be in writing by the deaf person (MCL 393.503[3], 393.504[2]; MSA 17.55[103][3], 17.55[104][2]).

3. WITNESSES — DEAF PERSONS' INTERPRETERS ACT.

The Deaf Persons' Interpreters Act provides that a certified interpreter or qualified interpreter shall not be appointed in any action before a court or a grand jury unless the appointing authority and the deaf person make a preliminary determination that that interpreter is able to readily communicate with the deaf person and to interpret the proceedings in which the deaf person is involved; the record should affirmatively disclose that such required preliminary determination was made (MCL 393.503[4]; MSA 17.55[103][4]).

4. WITNESSES — DEAF PERSONS' INTERPRETERS ACT.

The Deaf Persons' Interpreters Act requires an interpreter to make an oath or affirmation that the interpreter will make a true interpretation in an understandable manner to the deaf person for whom the interpreter is appointed and that the interpreter will interpret the statements of the deaf person in the English language to the best of the interpreter's skill (MCL 393.506[1]; MSA 17.55[106][1]).

5. APPEAL — CHILD CUSTODY.

The standard of review applied by the Court of Appeals in child

custody cases is a *de novo* review; the Court of Appeals will not disturb a child custody order unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or made a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

6. PARENT AND CHILD — CHILD CUSTODY.

A trial court which is deciding a child custody matter must evaluate each of the factors contained in the Child Custody Act and state a conclusion on each, thereby determining the best interests of the child (MCL 722.23; MSA 25.312[3]).

7. DIVORCE — CHILD CUSTODY — ADULTERY.

The Court of Appeals has held that a mother's act of unfaithfulness or of adultery does not necessarily preclude her from being awarded custody of her children.

8. PARENT AND CHILD — CHILD CUSTODY.

A statutory presumption provides that in a child custody dispute between the minor children's mother and their grandparents the best interests of the child are served by awarding custody to the parent, unless there is clear and convincing evidence to the contrary; a trial court's failure to consider this presumption in an appropriate action may be found to constitute reversible error (MCL 722.25; MSA 25.312[5]).

9. DIVORCE — CHILD CUSTODY — APPEAL — CUSTODIAL ENVIRONMENT.

A court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that a change of custody is in the child's best interest; the custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort; the age of the child, the physical environment, and the inclination of the custodian and the child as to the permanency of the relationship shall also be considered (MCL 722.27[c]; MSA 25.312[7][c]).

10. PARENT AND CHILD — CHILD CUSTODY — HANDICAPPERS — PUBLIC POLICY.

A trial court which is considering a parent's physical disability or handicap as a factor in the award of child custody must avoid impairing or defeating the public policy favoring the integration of the handicapped into the responsibilities and satisfactions of family life, the cornerstone of our social system.

*James R. Buckley, P.C.* (by *Kathleen Buckley),* for plaintiff.

*Dorean M. Koenig,* for defendant.

Before: GRIBBS, P.J., and BRONSON and SHEP-HERD, JJ.

PER CURIAM. Defendant, Vicky Bednarski, appeals as of right from an order of the circuit court awarding sole physical and legal custody of her children to their paternal grandparents.

Plaintiff, John Bednarski, and defendant, Vicky Bednarski, were married in 1973 and separated in December, 1982. They have two children, Timothy, born June 15, 1975, and Rebecca, born September 21, 1979. John and Vicky are deaf and unable to speak. Their children, as well as John Bednarski's parents, have normal hearing ability. The temporary order of the court, entered January 10, 1983, awarded joint custody of the minor children to both parents and further awarded physical custody of Timothy to plaintiff while physical custody of Becky was awarded to defendant. Following trial, held on July 28, 1983, the minor children were awarded to their 63- and 68-year-old paternal grandparents.

I

This appeal raises serious questions concerning the right of deaf persons to meaningful participation in judicial proceedings. Defendant was unquestionably entitled to meaningful participation in a proceeding which resulted in the loss of custody of her children. That her deafness seriously impairs meaningful participation is ironically reflected in the term used to describe such a proceeding—a "hearing". To deal with the unique

problems encountered by the involvement of deaf persons with the judicial process, the Legislature has enacted the Deaf Persons' Interpreters Act, MCL 393.501 *et seq.;* MSA 17.55(101) *et seq.*

The Deaf Persons' Interpreters Act, which became effective July 1, 1982, provides for the mandatory appointment of an interpreter in any action before a court or a grand jury where a deaf person is a participant in the action, either as a plaintiff, defendant, or witness, to perform three specific functions: (1) to interpret the proceedings to the deaf person; (2) to interpret the deaf person's testimony or statements; and (3) to assist in preparation of the action with the deaf person. MCL 393.503(1); MSA 17.55(103)(1). Any waiver of the right to an interpreter must be in writing by the deaf person. MCL 393.503(3); MSA 17.55(103)(3). Furthermore, an appointing authority—in this case, the circuit court—who knows a deaf person will be coming before it is obliged to inform the deaf person of the right to an interpreter. MCL 393.504(2); MSA 17.55(104)(2).

In addition to plaintiff and defendant, four other deaf persons testified at trial. One interpreter was sworn to interpret. The record indicates that the interpreter's function was to communicate questions and answers of each of the six deaf witnesses as they testified. She translated spoken questions into sign language for a deaf witness on the stand and then translated the sign language of the deaf witness into spoken words for the court.

Although the procedure followed at trial was designed to satisfy one of the functions prescribed by the Deaf Persons' Interpreters Act, that of interpreting the deaf person's testimony or statements, the record fails to indicate compliance with the two other mandated functions. Since the sole

interpreter was occupied with interpreting testimony of the various witnesses, defendant, when not on the stand herself, was unable to ask questions or otherwise communicate with others, including her counsel, during the course of trial. Moreover, the record is completely devoid of any evidence that an interpreter was involved with defendant and her counsel in the preparation of the action.[1]

Defendant is entitled to a trial which complies with the Deaf Persons' Interpreters Act. Therefore, we vacate the custody order and remand this case for a new trial. Under the circumstances of this case, where both parties and several additional witnesses are deaf, we think that the provisions of the act require the appointment of an interpreter for each plaintiff and defendant,[2] and a third interpreter for the court, if necessary. Either party may waive the right to an interpreter, so long as the waiver conforms with MCL 393.503(3); MSA 17.55(103)(3). The interpreters should be appointed well in advance of trial so as to enable their full assistance in preparation of the action.

Defendant raises additional requirements of the act with which the court failed to comply. The act provides:

[1] The record strongly suggests that neither the court nor counsel were aware of the Deaf Persons' Interpreters Act, although the court, as appointing authority, was on notice that the plaintiff and defendant were deaf from the initial filing of plaintiff's complaint for divorce.

[2] In a report on a workshop on interpreting for deaf people, Joseph P. Youngs discusses the participation of deaf persons in judicial proceedings. Youngs advises: "In a case involving the interests of two deaf persons, one against the other, it is recommended that each have his own interpreter. For one interpreter to serve both principals in a court case is to place him in an unfair, awkward, and complicated situation." *Interpreting for Deaf People,* Stephen P. Quiqley, Editor, U. S. Department of Health, Education and Welfare Social and Rehabilitation Service, Rehabilitation Service Administration, Washington, D. C. (1965), p 46.

"(4) A certified interpreter or qualified interpreter[3] shall not be appointed unless the appointing authority and the deaf person make a preliminary determination that that certified interpreter or qualified interpreter is able to readily communicate with the deaf person and to interpret the proceedings in which the deaf person is involved." MCL 393.503(4); MSA 17.55(103)(4).

On retrial, the record should affirmatively disclose that the required preliminary determination was made.

Prior to trial, counsel stipulated that the interpreter would "paraphrase" the answers of the witnesses to "expedite" the proceeding. Such a stipulation may have violated the provision of the act which requires an interpreter to make an oath or affirmation that the interpreter "will make a true interpretation in an understandable manner to the deaf person for whom the [interpreter] is appointed" and that the interpreter "will interpret the statements of the deaf person in the English language to the best of the interpreter's skill". MCL 393.506(1); MSA 17.55(106)(1). Due to the conceptual nature of sign language, a verbatim translation of oral testimony (or vice versa) may not be possible. However, the very fact of the unavoidable translation difficulty renders the need for accurate and skillful interpretation even more critical.[4]

In summary, on remand, the court, as well as counsel, should ensure that the proceedings are conducted in full accordance with the Deaf Persons' Interpreters Act.

---

[3] The act allows the appointment of either a certified interpreter or qualified interpreter. The definitions of each are set forth in MCL 393.502; MSA 17.55(102).

[4] "Above all, the interpreter's foremost desire should be to give a verbatim translation of the terminology used in legal proceedings. It is in his Code of Ethics. He is sworn to it by oath. The deaf have a right to it." *Interpreting for Deaf People, supra*, p 56.

## II

In addition to the issues concerning the propriety of the trial proceedings, defendant assigns numerous errors in connection with the trial court's awarding of custody to the paternal grandparents. Because we find many of defendant's contentions meritorious and to ensure a fair custody determination on remand, we will address defendant's remaining arguments. We bear in mind that the standard of review of child custody cases is *de novo. Deel v Deel,* 113 Mich App 556; 317 NW2d 685 (1982). This Court will not disturb a custody order unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or made a clear legal error on a major issue. MCL 722.28; MSA 25.312(8).

### (1)

When deciding a custody matter, the trial court must evaluate each of the factors contained in the Child Custody Act of 1970, MCL 722.23; MSA 25.312(3), and state a conclusion on each, thereby determining the best interests of the child. *Currey v Currey,* 109 Mich App 111, 117; 310 NW2d 913 (1981). In making the requisite findings, the trial court weighed the factor of moral fitness of the competing parties in favor of the paternal grandparents.

Questions as to defendant's moral fitness were raised repeatedly throughout trial. Plaintiff's counsel continually insinuated, through the interrogation of witnesses, that defendant was adulterous and generally immoral. This Court has previously held that a mother's unfaithfulness would not necessarily preclude her from having custody of her children. *Williamson v Williamson,* 122 Mich

App 667, 673-674; 333 NW2d 6 (1982). Moreover, in spite of a multitude of incriminating questions, there was little evidence of defendant's immorality and certainly not enough to justify weighing the morality factor in favor of the grandparents.

(2)

This custody dispute was between the minor children's mother and their grandparents. In such a situation, there is a statutory presumption that the best interests of the child are served by awarding custody to the parent, unless there is clear and convincing evidence to the contrary. MCL 722.25; MSA 25.312(5). "[T]his remains a presumption of the strongest order and it must be seriously considered and heavily weighed in favor of the parent." *Bahr v Bahr,* 60 Mich App 354, 359; 230 NW2d 430 (1975), *lv den* 394 Mich 794 (1975).

In *Williamson, supra,* pp 672-673, this Court found reversible error in the trial court's failure to consider the statutory presumption in a custody dispute between a mother and the paternal grandparents. Likewise in the instant case, the court's failure to consider, either expressly or implicitly, the statutory presumption was reversible error.

(3)

In its findings, the trial court considered factor (d) of MCL 722.23; MSA 25.312(3), the length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity. The court rated this factor equal for the competing parties since neither child had lived over seven months in the current environment, *i.e.,* Timothy with his grandparents and Rebecca with her mother. As to Rebecca, this finding was against the great weight of the evidence. Moreover, the finding failed to take into

account MCL 722.27(c); MSA 25.312(7)(c), which states in part:

"The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered."

Under this section, once a custodial environment has been established, a court must find clear and convincing evidence that a change of custody is in the child's best interest before such a change may be ordered. *Lyons v Lyons,* 125 Mich App 626, 632; 336 NW2d 844 (1983).

Rebecca had never lived with her grandparents and had lived all her life with her mother. The evidence introduced indicated that three-year-old Rebecca looked to her mother for guidance, discipline, the necessities of life, and parental comfort. The trial court erred in failing to find an established custodial environment and in not applying a clear and convincing evidentiary standard to determine whether a change of custody was in Rebecca's best interest.

(4)

The trial court's findings reveal that defendant's deafness was a highly important factor in the court's resolution of the custody dispute.

It was undisputed that the minor children had developed nonverbal communicative skills. Joanne

Gates, a phychologist who had experience working with the hearing impaired, testified that she had interviewed plaintiff, defendant, and the paternal grandparents. In her opinion, defendant was an adequate caretaker for her children, provided the children receive daily intensified verbal language stimulation. Another psychologist, Stephanie Hawka, interviewed the minor children. She testified that Timothy had no communicative deficits and that although she had seen some three-year-olds with better language skills than Rebecca, Rebecca's skills were not necessarily below normal. Both psychologists opined that Rebecca's verbal skills could develop normally if proper arrangements were made for her to attend counseling, head start, or other kind of special education program.

On this issue, the court found:

"The last fact is, anything else considered by the court to be relevant to a particular child custody dispute.

"This is exactly the kind of case where this factor is important. This is a very unusual case. We have two normal children, born to hearing impaired parents. Two normal children in the sense that they are possessed of the ability to speak and hear as most of us are able, and they must compete, as has been described by one of the psychologists today, in a world of persons who do speak and hear and rely heavily on linguistic skills, and I refer particularly to Miss—Mrs. Joanne Gates.

"And, the court having interviewed, or discussed for some time with Rebecca, or attempted to—anything frankly—was of the impression that the situation is, that she is developed mentally slow, or perhaps retarded without insulting her, in verbal skills, and that is is appropriate and necessary, if proper development is to take place, that she be placed in some of [sic] intensified language stimulation program. An environment that will enable her to develop her oral language

skills, so that as an adult, she is able to function at the highest possible level.

"Timothy is verbal, and I don't expect the problem to be nearly as severe with him. He has other special problems, which I'll comment on in a moment, but Rebecca is at a critical age in the court's opinion, and an extremely important factor that weighs in favor of the grandparents, in this court's opinion, is the need to be exposed to other persons who use their oral language skills to develop her ability to communicate on a regular basis, as well as providing the special training."

While we share the trial court's concern that the children develop adequate verbal and oral communicative skills, we think the court inappropriately weighed this factor against defendant. The testimony uniformly established that alternative means were available and that proper development of communication skills did not require removing the children from their mother's custody.

What consitutes proper consideration of a parent's physical disability or handicap as a factor in a custody award was the subject of *In re Marriage of Carney,* 24 Cal 3d 725; 157 Cal Rptr 383; 598 P2d 36 (1979). Taking note of the strong state and federal policies of pursuing the total intergration of handicapped persons into the mainstream of society, the court stated:

"No less important to this policy is the intergration of the handicapped into the responsibilities and satisfactions of family life, cornerstone of our social system. Yet as more and more physically disabled persons marry and bear or adopt children * * * custody disputes similar to that now before us may well recur. In discharging their admittedly difficult duty in such proceedings, the trial courts must avoid impairing or defeating the foregoing public policy." *In re Marriage of Carney, supra,* 24 Cal 3d 741.

This statement applies with equal force in our own

state, particularly in view of the Legislature's enactment of the Michigan Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

## III

In conclusion, the existing record does not contain clear and convincing evidence that it was in Rebecca's best interest to remove her from the custody of defendant. The evidence concerning Timothy's severe eye problem and his need for medical care, in conjunction with the parties' and Timothy's expressed preferences, convince us that it was not necessarily an abuse of discretion to award custody of Timothy to his grandparents. However, because of the unfairness of the trial, for reasons stated and unstated[5] in this opinion, and because more than a year has elapsed since the trial, we think it best that a new trial be held to determine custody of both children. The trial should be held before a different trial judge and additional evidence concerning the past year may be introduced. We retain jurisdiction.

Reversed and remanded.

---

[5] Aside from the violations of the Deaf Persons' Interpreters Act, much of the conduct of plaintiff's counsel was improper and violated evidentiary rules, although defendant's attorney raised few objections. Furthermore, both sides failed to establish pertinent facts. As a consequence, the trial court at one point requested plaintiff's counsel to ask certain questions of defendant on cross-examination. Although the court's attempt to remedy the inadequate record is laudable, the method chosen provided plaintiff's counsel with yet another opportunity to transgress evidentiary rules.