STATE of Missouri, Plaintiff-Respondent,

v.

Wallace SPIVEY, Defendant-Appellant.

No. 53295.

Missouri Court of Appeals, Eastern District, Division Three.

June 14, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 20, 1988.

Application to Transfer Denied Sept. 13, 1988.

Dorothy Mae Hirzy, Sp. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of capital murder and the resultant sentence of life imprisonment without probation or parole for 50 years. We affirm.

Following Defendant's first trial we reversed and remanded for new trial. *State v. Spivey*, 710 S.W.2d 295 (Mo.App.1986). *See also State v. Randolph*, 698 S.W.2d 535 (Mo.App.1985). No challenge is made to the sufficiency of the evidence and the facts surrounding the crime are set forth in the above cited cases. Defendant raises two contentions of error.

■ The first challenges the admission of testimony by a police officer of a statement made to the officer by defendant through an interpreter. Specifically defendant contends that the interpreter did not give a factual basis for his opinion that defendant understood his *Miranda* rights before making the statement thereby rendering the statement inadmissible. The interpreter could not remember specifically the exact signs he utilized to explain the *Miranda* rights to the pre-lingually deaf defendant. He testified, however, that he engaged defendant in a twenty minute "rapport" conversation to determine that he and defendant could communicate effectively with each other. He then spent forty-five minutes explaining the *Miranda* rights to defendant and from defendant's responses believed defendant understood the communications and the rights explained. No challenge is made to the qualifications of the interpreter and in fact no viable challenge could have been leveled. The interpreter explained the rights to defendant and then had defendant "paraphrase or put into his own words what he understood that to be." Defendant's responses caused the interpreter to believe that defendant understood what the interpreter communicated. The interpreter was a competent witness to testify to the communications between himself and defendant. *Avaro v. Avaro*, 235 Mo. 424, 138 S.W. 500 (1911) [7]. His testimony created the foundation for admission of the police officer's testimony of the content of the statement. We find no error.

■ Defendant's remaining point premises error on the trial court's failure to declare a mistrial when defendant unresponsively made reference during his direct testimony to having received fifty years "the first time when I was in court." No objection was made to this statement and no relief was requested of the trial court. After ten more questions to the defendant the trial court called counsel and the interpreters to the bench. He requested the interpreters to omit from their recitations of defendant's answers any references he might make to having been previously convicted or sentenced in the earlier trial. Counsel for defendant indicated to the court that she and defendant had previously talked about referring to the prior trial. No relief was sought at the bench conference. Defendant first raised the issue in the motion for new trial which also states that defendant "had been told that he was not to mention the prior conviction but did so anyway."

We may, in our discretion, consider plain errors affecting substantial rights if we find manifest injustice or a miscarriage of justice. We find neither here. The statement made was volunteered by defendant after having been expressly told not to refer to it; the statement was isolated and neither highlighted nor emphasized; the trial court waited for several more questions before taking action thereby insulating the bench conference from the statement. In determining manifest injustice a prime factor is the strength of the state's case. *State v. Gilmore*, 681 S.W.2d 934 (Mo. banc 1984) [25]. In defendant's statement to the police, he stated that he choked the victim until he was dead. In his testimony at trial he stated he choked the victim and put him in a bathtub but that he did so at the urging of Ronnie Randolph and that the victim was alive when defendant left the apartment. He also admitted taking the victim's property when he left the apartment and admitted that he made no effort to obtain assistance for the victim.

Judgment affirmed.

KAROHL, P.J., and KELLY, J., concur.