PEOPLE v BRANNON

Docket No. 119185. Submitted April 15, 1992, at Lansing. Decided
　　May 4, 1992, at 9:40 A.M. Leave to appeal sought.
　　Calvin D. Brannon was convicted by a jury in the Ingham Circuit
　　Court, Lawrence M. Glazer, J., of first-degree felony murder,
　　and was sentenced to life imprisonment without the possibility
　　of parole. He appealed.

　　The Court of Appeals *held:*

　　1. There was sufficient evidence presented by the prosecution
to bind the defendant over to the circuit court on the charge of
first-degree felony murder. The circuit court correctly held that
the magistrate's decision to bind the defendant over for trial on
the reduced charge of second-degree murder was an abuse of
discretion. The trier of fact could infer from the evidence that
the killing and the underlying felony, larceny, were so closely
connected in time, place, and causal relation that the homicide
was incident to the larceny and associated with it as one of its
hazards. The question regarding when the defendant's larce-
nous intent was formed was for the jury to decide, not the
examining magistrate.

　　2. The findings of fact enunciated by the trial court after
conducting a hearing to determine the admissibility of the
defendant's statements under the Deaf Persons' Interpreters
Act, MCL 393.501 *et seq.*; MSA 17.55(101) *et seq.,* were not
clearly erroneous. The totality of the circumstances surround-
ing the defendant's statements demonstrates that he under-
stood his rights and agreed to waive them by speaking to the
police. Under the circumstances, the court did not err in ruling
that the defendant voluntarily waived his rights and that the
waiver was intelligently and knowingly made.

　　3. The affidavits offered in support of the warrant to search
the defendant's residence established probable cause to search

REFERENCES

Am Jur 2d, Evidence §§ 555-557; Homicide § 46; Larceny § 40; Trial
　　§ 230.
Application of felony-murder doctrine where the felony relied upon
　　is an includible offense with the homicide. 40 ALR3d 1341.
Criminal trial of deaf, mute, or blind person. 80 ALR2d 1084.

the home. No error resulted where the affidavit offered in support of the warrant request incorporated two other affidavits related to the homicide. Even if the supplemental affidavits were hearsay, they were adequate because each specifically named the individual supplying the information and alleged that the information was based on personal knowledge. The warrant was sufficiently particular with regard to the place to be searched and the items to be seized.

Affirmed.

1. HOMICIDE — FIRST-DEGREE MURDER — FELONY MURDER — LARCENY.

A homicide that occurs during the commission of, or attempt to commit, larceny of any kind is first-degree murder; it is not necessary that the murder be contemporaneous with the larceny, only that the defendant intended to commit the larceny at the time the homicide occurred; the felony-murder doctrine does not apply where the intent to steal the property of the victim was not formed until after the homicide (MCL 750.316; MSA 28.548).

2. CRIMINAL LAW — EVIDENCE — DEAF PERSONS' INTERPRETERS ACT.

An evidentiary hearing must be conducted when there is a challenge of the admissibility of a statement from a defendant who claims to have a hearing deficiency and asserts that an interpreter should have been provided before the statement was made; if the court finds that the defendant is deaf, any statement made by the defendant unaided by an interpreter must be automatically excluded; if the court finds that the defendant is not deaf, it still must determine whether the defendant was able to comprehend applicable rights and make a knowing and intelligent waiver of those rights; the court's findings are reviewed for clear error (MCL 393.502[e], 393.505; MSA 17.55[102][e], 17.55[105]).

3. CRIMINAL LAW — EVIDENCE — HEARING-IMPAIRED DEFENDANTS — WAIVER OF RIGHTS.

Before utilizing a statement made by a hearing-impaired defendant either with or without the assistance of an interpreter, it must be established by a preponderance of the evidence that *Miranda* rights were comprehended by the defendant and were intelligently waived before making the statement; because an effective waiver of *Miranda* rights does not require an oral recitation, a written advice-of-rights form may be used; a waiver is intelligently made when the *Miranda* warnings are explained to the defendant by an interpreter familiar with and competent in the defendant's primary language.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, and *Susan L. LeDuc,* Deputy Chief Assistant, for the people.

State Appellate Defender (by *Fred E. Bell*), for the defendant on appeal.

Before: CAVANAGH, P.J., and CONNOR and R. J. SNOW,* JJ.

CONNOR, J. Defendant appeals as of right his judgment of sentence of April 19, 1989. A jury convicted defendant of one count of first-degree felony murder, MCL 750.316; MSA 28.548, and he received a mandatory sentence of life imprisonment without possibility of parole. We affirm.

The victim in this case was found dead in her home on October 8, 1987. The cause of death was established as multiple stab wounds to the chest area. The front screen door had a cut in it, apparently made by a knife. Inside the victim's home, the contents of her purse were strewn about the area where it was believed a struggle occurred. Many items thought to have been inside the purse were covered with blood, including the victim's driver's license and her wallet. The wallet was found to contain one folded-up dollar bill in the change section along with some change. The victim's live-in boyfriend testified that he saw the victim place at least $4 inside the wallet the evening before her death.

I

Defendant first argues that there was insufficient evidence presented by the prosecution to

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

bind him over to the circuit court on the charge of first-degree felony murder. The examining magistrate originally agreed with defendant and only found probable cause to charge defendant with second-degree murder. The prosecutor appealed that ruling to the circuit court, which reversed the magistrate's decision and charged defendant with first-degree felony murder.

In order for a defendant to be bound over for trial, the magistrate must find that there is evidence amounting to probable cause to believe that a felony has been committed. *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989); MCL 766.13; MSA 28.931. Although a finding of guilt beyond a reasonable doubt is not necessary, there must be evidence regarding each element of the crime charged or evidence from which the elements may be inferred. *Hill, supra.*

In reviewing a decision to bind a defendant over for trial, the circuit court may not substitute its judgment for that of the examining magistrate, and may reverse only if it appears on the record that the magistrate abused his discretion. *People v Cotton,* 191 Mich App 377, 384; 478 NW2d 681 (1991). This Court also reviews the record to determine if the examining magistrate committed an abuse of discretion. *People v Lopez,* 187 Mich App 305, 308; 466 NW2d 397 (1991).

For felony murder, the following elements of the crime must be established:

> (1) [T]he killing of a human being (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in

MCL 750.316; MSA 28.548. [*People v Bush,* 187 Mich App 316, 327; 466 NW2d 736 (1991).]

See also *People v Flowers,* 191 Mich App 169, 174-176; 477 NW2d 473 (1991).

The enumerated felony relied upon in this case was larceny. The statute, MCL 750.316; MSA 28.548, provides that murder is of the first degree if "committed in the perpetration, or attempt to perpetrate . . . larceny of any kind." Because the intent to commit the enumerated felony of larceny was an element of the crime of felony murder, the prosecution had to produce some evidence with regard to this element or evidence from which this element could be inferred. *Hill, supra,* p 469.

It is not necessary that the murder be contemporaneous with the enumerated felony. The statute requires only that the defendant intended to commit the underlying felony at the time the homicide occurred. *People v Goddard,* 135 Mich App 128, 136; 352 NW2d 367 (1984), rev'd on other grounds 429 Mich 505; 418 NW2d 881 (1988); *People v Vaughn,* 128 Mich App 270, 273-274; 340 NW2d 310 (1983). However, the felony-murder doctrine will not apply if the intent to steal property of the victim was not formed until after the homicide. *People v David Wells,* 102 Mich App 122, 133; 302 NW2d 196 (1980). Where evidence conflicts or raises a reasonable doubt regarding the defendant's guilt, it is not for the examining magistrate to discharge the defendant; such questions are for the trier of fact to resolve. *People v Doss,* 406 Mich 90, 103; 276 NW2d 9 (1979).

In this case, the examining magistrate in the district court bound the defendant over on a charge of second-degree murder because the magistrate found that the evidence that money was removed from the victim's wallet merely estab-

lished that a larceny was committed. The magistrate felt the larceny could have been an afterthought to the homicide and noted that the wallet was covered with blood. The prosecution appealed this decision to the circuit court. The circuit court found that the examining magistrate had abused his discretion by unduly focusing on the timing of the larceny rather than the timing of the intent. The court also found that a jury could infer that the defendant intended to commit the larceny at the time of the killing and ordered the defendant bound over on a charge of first-degree felony murder. The court specifically referred to medical testimony regarding the presence of defensive wounds on the victim's hands, indicating a struggle, and police testimony that placed the strewn contents of the victim's purse 1½ to 2 feet from where the struggle began.

Although it is a close question, we agree with the circuit court that the decision to bind defendant over for trial on the reduced charge of second-degree murder was an abuse of discretion. The trier of fact could infer from the evidence that the killing and the underlying felony were so closely connected in point of time, place, and causal relation that the homicide was incident to the felony and associated with it as one of its hazards. *Goddard, supra,* p 136. Considering all the facts and circumstances in evidence, we believe the trier of fact could infer that the wounds were inflicted during a struggle for the purse. We find in this case that the question regarding precisely when the defendant's larcenous intent was first formed was for the jury to decide, not the examining magistrate. *Flowers, supra,* pp 178-179.

II

Defendant's next issue on appeal concerns his

challenge of statements made to the police that were ruled admissible by the trial court. The challenge of the admissibility of these statements is based on the Deaf Persons' Interpreters Act, MCL 393.501 *et seq.*; MSA 17.55(101) *et seq.* Section 5 of that act, MCL 393.505; MSA 17.55(105), provides as follows:

> (1) If a deaf person is arrested and taken into custody for any alleged violation of a criminal law of this state, the arresting officer and the officer's supervisor shall procure a certified interpreter or qualified interpreter in order to properly interrogate the deaf person and to interpret the deaf person's statements.
>
> (2) A statement taken from a deaf person before a certified interpreter or qualified interpreter is present shall not be admissible in court.

The act defines a "deaf person" as

> a person whose hearing is totally impaired or whose hearing, with or without amplification, is so seriously impaired that the primary means of receiving spoken language is through other sensory input; including, but not limited to, lip reading, sign language, finger spelling, or reading. [MCL 393.502(e); MSA 17.55(102)(e).]

The purpose of the act is to provide a way for deaf individuals to meaningfully participate in judicial (or investigative) proceedings. *Bednarski v Bednarski,* 141 Mich App 15, 19-20; 366 NW2d 69 (1985). Our research has not disclosed a published criminal case where this act has been applied.

A

A trial court's decision regarding whether an

individual is a deaf person is based upon factual findings, and we review that decision for clear error. MCR 2.613(C). An evidentiary hearing should be conducted when there is a challenge of the admissibility of a statement from a defendant who asserts he should have been provided with an interpreter under MCL 393.505; MSA 17.55(105).

We believe the preliminary focus of the hearing is sufficiently stated in MCL 393.502(e); MSA 17.55(102)(e) by the definition of a "deaf person." The testimony should center on whether the individual lacked the necessary communication skills to make a statement without the aid of an interpreter.

In this case, there was conflicting testimony from experts and laypersons regarding defendant's hearing ability. There was no question that defendant has had some form of hearing impairment for years and has even worn a hearing aid in the past. However, he apparently did not require the use of the hearing aid in his day-to-day activities, and refused to wear it for unknown reasons. Nonetheless, the experts testified that although defendant could hear some conversation, particularly at elevated levels, he still relied on visual cues to receive communications. Defendant was believed to be proficient at lip reading, but was never tested for this skill.

Other witnesses who either worked with defendant or engaged in high school athletics with him offered a different view of his hearing ability. They either were not aware that defendant had any hearing problem or had seen him pretend not to hear in situations where he was being scolded or embarrassed.

Most of the officers who had contact with defendant during his four police interviews noted that he had a speech or hearing problem, and efforts

were made to ensure that he could hear and understand. Defendant told the officers that he had a bad ear, and he would turn so that the officers' voices were directed at his good ear. At no point did defendant state that he was deaf or required an interpreter. The officers did not inquire if an interpreter was needed. All conversations with the police were conducted with only a few feet, or less, of space separating the conversants. The officers also provided defendant with a copy of an advice-of-rights form to follow along as they explained his rights. Generally, defendant did not appear to have a problem understanding the officers, although some statements had to be repeated, and defendant gave appropriate responses to all questions he was asked.

We have reviewed the findings of fact enunciated by the court after it conducted an evidentiary hearing regarding defendant's hearing ability. We do not find the findings of fact and conclusions of law with regard to this issue to be clearly erroneous. The evidence conflicted with regard to the degree of defendant's hearing disability and whether he was required to rely on means other than hearing to receive spoken communications.

Our analysis does not end here, however. We believe a reviewing court must engage in a two-step analysis when determining whether a defendant's statement is admissible when he claims he has a hearing deficiency. First, if the court finds the defendant is "deaf," as defined by the statute, then the Legislature has provided that the defendant cannot be interrogated unless he is provided with an interpreter and that any statement made by a deaf defendant unaided by an interpreter must be automatically excluded. MCL 393.502(e); MSA 17.55(102)(e); MCL 393.505(2); MSA 17.55(105)(2). Second, if the court finds the defen-

dant is not "deaf," as provided by the statute, the court must still determine whether the hearing-impaired defendant was able to comprehend his rights and make a knowing and intelligent waiver of his rights.

B

We believe the Deaf Persons' Interpreters Act is generally based on the same Fifth Amendment concepts associated with the waiver of rights and the voluntariness of statements. Consequently, we find that the basic principles applicable to *Walker*[1] hearings are applicable to hearings under the Deaf Persons' Interpreters Act. Where a defendant does not knowingly and intelligently waive his *Miranda*[2] rights, the statement is involuntary. *People v Nantelle,* 130 Mich App 51, 53; 342 NW2d 627 (1983). A defendant must understand the circumstances surrounding an interrogation, otherwise the voluntariness of any statement is vitiated. *People v Langston,* 57 Mich App 666, 675; 226 NW2d 686 (1975).

An effective waiver of *Miranda* rights does not require an oral recitation. Although it is not generally encouraged, a written advice-of-rights form may be sufficient. *Nantelle, supra,* pp 52-53. The use of a written form becomes more palatable in a case involving a defendant who is hearing-impaired.

Before utilizing a statement made by a hearing-impaired defendant either with or without the assistance of an interpreter, it must be established that the defendant comprehended his *Miranda*

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

rights and intelligently waived them before making the statement. See *State v Spivey,* 755 SW2d 361, 362 (Mo App, 1988); *State v Randolph,* 698 SW2d 535, 539 (Mo App, 1985). A waiver is intelligently made when the *Miranda* warnings are explained to the defendant by an interpreter familiar with and competent in the defendant's primary language. *State v Mason,* 53 Or App 811, 821-822, n 3; 633 P2d 820 (1981). Where a hearing-impaired defendant is subjected to polygraph examinations, even greater care must be taken in explaining the rights and questions involved. *Id.*

When the defendant has challenged the admissibility of his statements, the prosecution has the burden of proving voluntariness by a preponderance of the evidence. *People v DeLisle,* 183 Mich App 713, 719; 455 NW2d 401 (1990). When reviewing the voluntariness of a statement, we review the trial court's determination after a review of the entire record, and an independent determination is made by this Court. However, great deference is given to the trial court's assessment of the credibility of witnesses, and its findings of fact will not be reversed unless clearly erroneous. *People v Seymour,* 188 Mich App 480, 482-483; 470 NW2d 428 (1991).

We have considered the totality of the circumstances surrounding the defendant's statements that were ruled admissible by the trial court, *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988). We believe that the totality of the circumstances demonstrate that defendant understood his rights and agreed to waive them by speaking to the police. In light of defendant's hearing difficulties, the police took special care to see that he understood his rights by use of a written form explaining the rights he was waiving. Under these circumstances, we do not believe the

trial court erred in ruling that defendant voluntarily waived his rights and that the waiver was intelligently and knowingly made.

### III

The third and final issue raised by defendant concerns whether the affidavits presented in support of a search warrant established probable cause. The warrant allowed the police to search defendant's residence, where they found bloodstained clothing and shoes placed within a suspended ceiling in the basement.

An affidavit for the search warrant was prepared by Officer Michael Debnar. It incorporated by reference two other affidavits.

Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person. to believe that the evidence of a crime or the contraband sought is in the place requested to be searched. *People v Lucas,* 188 Mich App 554, 567; 470 NW2d 460 (1991).

After reviewing the affidavits offered in support of the search warrant, we find no error. The affidavits established probable cause to search defendant's home, which he shared with his mother, for evidence related to the victim's homicide. We also find no error in the fact that the affidavit offered in support of the warrant request incorporated two other affidavits related to the homicide. Even if we were to treat the supplemental affidavits as hearsay, we would still find them adequate because each specifically named the individual supplying the information and alleged that the information was based on personal knowledge. MCL 780.653; MSA 28.1259(3); *People v Harris,* 191 Mich App 422, 425; 479 NW2d 6 (1991). Compare *People v Sherbine,* 421 Mich 502, 507-511;

364 NW2d 658 (1984).[3] The supplemental affidavit of Glenda Wells established that she had a telephone conversation with the victim shortly before her death and that defendant was at the victim's home at that time, and Officer Davis' affidavit established the circumstances of the victim's death. This information coupled with Officer Debnar's own personal information established that there was probable cause to search defendant's home for evidence related to the victim's death. Moreover, the warrant was particular enough with regard to the place to be searched and the items to be seized. US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651; MSA 28.1259(1). Contrary to defendant's argument, there was no evidence that the home he shared with his mother was a multi-unit dwelling. Therefore, unit numbers were not required for the warrant. See *People v Hunt,* 171 Mich App 174, 177; 429 NW2d 824 (1988).

Affirmed.

---

[3] The 1988 amendments of MCL 780.653; MSA 28.1259(3) are not applicable in this case because the search warrant was obtained in 1987.