# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN LEE CARTER,

        Defendant-Appellant.

UNPUBLISHED
August 10, 2017

No. 331332
Gladwin Circuit Court
LC No. 15-007784-FH

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his sentence as a third habitual offender, MCL 769.11, which followed a jury trial. The trial court sentenced defendant to serve concurrent prison terms of 34 months to 10 years for his conviction of felon in possession of a firearm, MCL 750.224f(1), and felon in possession of ammunition, MCL 750.224f(3), as well as a consecutive 2-year term for his possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, charge. We affirm.

The police discovered three firearms, with ammunition, while executing a search warrant at the residence of defendant's girlfriend, Melinda Henninger (Henninger), a residence that defendant was known to frequent.[1] Defendant argues on appeal that the search warrant was not based on probable cause because a material statement was omitted from a stale affidavit in support of the warrant and that the prosecutor failed to provide timely notice of his intent to enhance defendant's sentence under the habitual offender statute. Further, he argues that the trial court denied him a fair trial by failing to provide an evidentiary hearing and by extensively questioning defense witnesses. We disagree.

---

[1] Defendant's grandfather, LeBurn Patterson, and defendant's mother, Wanda Patterson, stated that defendant had lived with them since June 2013, when LeBurn moved from 615 Hawkins Road to West Branch. LeBurn had allowed Henninger to live in the vacant home at 615 Hawkins since November 2014 and defendant had been spending time there to renovate the house.

-1-

"This Court reviews a trial court's ruling regarding a motion to suppress for clear error;" "questions of law relevant to the suppression issue are reviewed de novo." *People v Sobczak-Obetts*, 463 Mich 687, 694; 625 NW2d 764 (2001) (citations omitted). This Court reviews a trial court's decision regarding "[w]hether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit" for an abuse of discretion. *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). This Court reviews de novo as a question of law whether the prosecutor complied with the requirements of the habitual offender statute. *People v Hornsby*, 251 Mich App 462, 469; 650 NW2d 700 (2002).

The United States and Michigan Constitutions both guarantee the right of persons to be secure against *unreasonable* searches and seizures. US Const, Am IV; Const 1963, art 1, § 11 (emphasis added). "In order to show that a search was legal, the police must show either that they had a warrant or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Eaton,* 241 Mich App 459, 461; 617 NW2d 363 (2000) citing *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993) (emphasis added). "A magistrate may issue a search warrant only when it is supported by probable cause." MCL 780.651(1); *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001). "The magistrate's findings of reasonable or probable cause shall be based on all the facts related within the affidavit made before him or her." MCL 780.653; *Ulman*, 244 Mich App at 509. "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *Id*. at 509, quoting *People v Brannon*, 194 Mich App 121, 132; 486 NW2d 83 (1992). A search based on an invalid search warrant is considered unreasonable. *People v Hellstrom*, 264 Mich App 187, 192; 690 NW 2d 293 (2004), citing *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000).

Defendant argues that there was no probable cause to issue a search warrant for a firearm at Henninger's residence, where he often spent the night, because the affidavit for the search warrant omitted a material fact – that Henninger had said that there were no guns in the home during an interview conducted by Trooper Brooks. Evidence located based on a warrant must be suppressed where the affidavit in support of the search warrant contained a false statement that was "necessary to a finding of probable cause." *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992), citing *Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978). Here, the affidavit was prepared by Michigan State Police Detective Sergeant William Veltman, who had executed over 200 search warrants throughout his 20 years of investigating thousands of criminal complaints, based on a complaint by Kim Holtz (Holtz) to Michigan State Police Trooper Eric Brooks.[2] Holtz, who is Henninger's friend, told Trooper Brooks that on October 17, 2014, when she was present at Henninger's residence on Hawkins Road painting, defendant entered the room she was working on and told her to "get the f*** out." Upon that demand, she left the house, but while she was still making her way down the

---

[2] "[P]robable cause may be founded upon hearsay." *Franks*, 438 US at 165.

driveway, defendant pointed a .308 rifle inscribed with the words "bone collector" and caused her to fear for her life. Holtz also told Trooper Brooks that defendant had been convicted of a previous felony, which was confirmed, and that defendant kept additional guns at the residence.

Detective Veltman subsequently observed a truck in the driveway of the residence on five or six occasions and this vehicle was registered to defendant. Veltman also recalled that a neighbor had told him on November 24, 2014, in a separate investigation, that he often hunted with defendant. Detective Veltman stated that his experience informed him that a person who had firearms on the property also likely had ammunition, that people possess firearms for periods of years, and that firearms possessed illegally are typically hidden. Detective Veltman requested a warrant to search the residence for a .308 rifle inscribed with "bone collector," other firearms, and ammunition, in furtherance of the investigation of felonious assault in which Holtz was the victim and potential charges of felon in possession of a firearm against defendant.

Detective Veltman's affidavit was based on Trooper Brooks's police report, which indicated that Holtz had been visiting Henninger when defendant ordered her out of the home and pointed the white .308 rifle, the "bone collector," at her. The police report included information that Trooper Brooks had spoken with Henninger, who stated that she did not see the incident because she had been in a different room and that 'there [were] no weapons in the house except for a crossbow." However, Detective Veltman's affidavit did not include this information.

Defendant argues that Detective Veltman's affidavit tactically omitted the material information that a resident of the home had stated that there were no weapons in the home, and that, accordingly, there should be no finding of probable cause. Defendant asserts that the statement made by Henninger should have been included because it was her home and therefore, she was in a better position than Holtz to provide reliable information as to the contents of the residence. "The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *Ulman*, 244 Mich App at 510, citing *Franks*, 438 US at 171-172; *Stumpf*, 196 Mich App at 224. "This standard also applies to material omissions from affidavits." *Ulman*, 244 Mich App at 510; *Stumpf*, 196 Mich App at 224, citing *Franks*, 438 US at 155-156. Defendant proffered Detective Veltman's and Trooper Brooks's police reports to support his claim.

Here, there was no evidence that the omission was intentional, knowing, or a reckless disregard for the truth. It could just as likely have been a mistake or an oversight, or the information could have been considered irrelevant given that Detective Veltman was chronicling the reasons that supported probable cause for a warrant rather than against one. However, assuming that leaving Henninger's statement out of the affidavit was a material omission, the facts contained in the affidavit were nonetheless sufficient to support a finding of probable cause. The omission was not "necessary to a finding of probable cause," and would not have negated the information that gave rise to a finding of probable cause had it been included. *Stumpf*, 196 Mich App at 224.

The affidavit in support of a search warrant is presumed to be valid. *People v Mullen*, 282 Mich App 14, 23; 762 NW2d 170 (2008). "A magistrate's determination of probable cause should be paid great deference by reviewing courts" because "[a] grudging or negative attitude

-3-

by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000), quoting *Illinois v Gates*, 462 US 213, 236-237; 103 S Ct 2317; 76 L Ed 2d 527 (1983)(internal quotation marks omitted). "A search warrant should be upheld if a substantial basis exists to conclude that there is a fair probability that the items sought will be found in the stated place." *Whitfield*, 461 Mich at 444, citing *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992). The inquiry for the reviewing court is "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Whitfield*, 461 Mich at 444, citing *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1995). "The underlying affidavit must be read in a common sense and realistic manner." *People v Whitefield*, 461 Mich 441, 444; 607 NW2d 61 (2000).

Here, there was a substantial basis for a cautious person to conclude that there was a fair probability that the .308 rifle and other guns and ammunition would be found at Henninger's residence. Detective Veltman reported that defendant pointed a specifically identifiable rifle at Holtz, who was visiting the property. Holtz knew of that rifle and that defendant had other guns as well. A neighbor stated that defendant often hunted. Holtz stated that defendant was at the home and that defendant's girlfriend resided there, and Detective Veltman observed defendant's vehicle at the property on numerous occasions. Detective Veltman described the experience of how he had discovered hundreds of firearms during the over 200 search warrants he had conducted and how during over 95% of such searches, ammunition was found with the firearms and that those persons who possess firearms usually possess them for years. He used this knowledge as well as the totality of the circumstances in this case to reasonably conclude that the guns would likely have remained hidden in the home with ammunition present. "[T]he affiant's experience is relevant to the establishment of probable cause," and "[p]olice officers are presumptively reliable." *Ulman*, 244 Mich App at 509 (citations omitted). Furthermore, regarding the conflicting statements by Holtz and Henninger about the presence of firearms in the home, the trial court gave more credence to Holtz's account as the alleged victim, than to Henninger's account as defendant's girlfriend, insinuating that Henninger could have been biased. Thus, the affidavit contained information sufficient to give rise to a finding of probable cause to believe that defendant had guns and ammunition at Henninger's residence. Therefore, this Court does not find error in the trial court's decision to deny defendant's motion to suppress evidence.

Defendant also argues that the trial court erred in failing to hold an evidentiary hearing to determine whether there was probable cause for the search warrant, considering Henninger's omitted statement that there were no guns in the home. "A defendant is entitled to a hearing to challenge the validity of a search warrant if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.' " *Mullen*, 282 Mich App at 23, quoting *Franks*, 438 US at 155-156. As discussed, the omitted statement was neither necessary to the finding of probable cause nor would its inclusion have negated a finding of probable cause. Additionally, there was no suggestion of what evidence might have come out at a hearing that the trial court did not consider. Notably, the trial court considered the police report containing the omitted statement, and considered whether there was probable cause with the inclusion of the omitted statement. Further, the trial court was not asked to conduct an evidentiary hearing on the matter. An

evidentiary hearing is not required where probable cause to issue a warrant continues to exist upon consideration of the information of the affidavit including material omissions or omitted false statements. *People v Martin*, 271 Mich App 280, 313; 721 NW2d 815 (2006). Thus, the trial court did not abuse its discretion by not holding an evidentiary hearing regarding the omitted statement in the affidavit, even if one had been requested.

Next, defendant argues that the information in Veltman's affidavit supporting the search warrant was stale because the affidavit was prepared seven weeks after the police learned of Holtz's allegations and attained the warrant. Trooper Brooks recorded Holtz's complaint on October 18, 2014, and the affidavit for a search warrant was filed on December 4, 2014. The facts on which a warrant is based must be sufficiently near in time to the issuing of the warrant that the probable cause to search continued at the time of the warrant. *Sgro v United States*, 287 US 206, 210; 53 S Ct 138; 77 L Ed 260 (1932); *Russo*, 439 Mich at 606. Probable cause means that "certain identifiable objects 'are probably to be found at the present time in a certain identifiable place.' " *Stumpf*, 196 Mich App at 226, quoting *Russo*, 439 Mich at 605, quoting 2 LaFave, Search and Seizure (2d ed), § 3.7, p 75. "Thus, staleness is a factor to weigh in determining if there is probable cause to search." *Stumpf*, 196 Mich App at 226, citing *Russo*, 439 Mich at 605.

The "particular circumstances of the case" should be evaluated, including consideration of factors such as "the age of the information," "whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense." *Stumpf*, 196 Mich App at 226, quoting *Russo*, 439 Mich at 605-606. Here, there were 47 days between the time that Trooper Brooks took Holtz's complaint and Detective Veltman completed the affidavit for a search warrant. Defendant asserts that this was enough time to reasonably assume he had moved any illegal firearms from Henninger's residence, particularly after Henninger was asked about the weapons and Trooper Brooks attempted to contact defendant. However, Detective Veltman stated that guns typically remain in the same residence for long periods of time, and it is reasonable to suspect that guns are relatively stationary and not prone to deterioration. They are not typically stored in a place other than where the owner is generally present. Furthermore, given that Holtz had definitively described at least one firearm that was at the residence, and stated that defendant had more guns, defendant was reasonably thought to have stored illegal firearms at Henninger's residence where four witnesses (Holtz, Henninger, a neighbor, and Detective Veltman) confirmed that defendant had been present on five or six occasions. Thus, considering the totality of the circumstances, the trial court did not clearly err in finding that there was probable cause to believe that the rifle would still be located at the home. The affidavit contained Holtz's statement that defendant had the .308 "bone collector" at the home, owned other guns, and that a durable item such as a rifle would continue to exist seven weeks after a complaint at the location where the defendant was reportedly residing. The trial court did not clearly err by denying defendant's motion to suppress.

Next, defendant argues that the trial court erred in sentencing defendant as a third habitual offender, stating that the prosecution was not timely in the filing of a notice pursuant to MCL 769.13. MCL 769.13 sets forth the requirements for enhancing a defendant's sentence due

to prior felony convictions. MCL 769.13(1) provides the time requirements that the prosecutor must meet, stating:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

"The purpose of the 21-day notice rule is to give the defendant notice of the potential consequences should a conviction arise." *People v Siterlet*, 299 Mich App 180, 185-186; 829 NW2d 285 (2012), (vacated in part on other grounds) 495 Mich 919 (2013), citing *People v Shelton*, 412 Mich 565, 569; 315 NW2d 537 (1982)(superseded by statute). The time requirements of MCL 769.13(1) are a " 'bright-line test' that must be strictly applied." *People v Ellis*, 224 Mich App 752, 755; 569 NW2d 917 (1997).

Defendant waived his arraignment and thus, the prosecutor was required to provide written notice of intent to enhance defendant's sentence "within 21 days after the filing of the information charging the underlying offense." MCL 769.13(1). The complaint was filed on January 27, 2015, and a notice of defendant's habitual status was attached. The district court held a preliminary examination in which defendant was bound over to the circuit court on March 31, 2015. On March 31, 2015, the prosecutor filed the information; attached was the habitual notice which was date stamped twice (1/27/15 and 3/31/15).

Thus, the prosecutor complied with the 21-day-notice rule because he attached a notice to the original information in the case. Notice of an intent to charge defendant as a habitual offender was attached to both the complaint the day that defendant was bound over, and to the information that was filed. Defendant also argues that the initial information was not appropriate notice because it was provided and signed on December 9, 2014, but was not filed until January 27 and again on March 31, 2015. The clear language of the statute provides for notice "within 21 days after the filing of the information charging the underlying offense." The notice was filed with the information in both instances; it was filed within 21 days after the filing of the information.

Defendant also argues that the prosecutor did not file a proof of service that the notice was served on defendant or received by defendant as required. MCL 769.13(2) requires the prosecutor to file a proof of service of its notice of intent to seek an enhanced sentence in the trial court. Here, the trial court record does not contain a proof of service. However, defendant does not claim that he did not receive the habitual notice. The lack of proof of service is harmless error where, as is the case here, defendant had notice of the prosecutor's intent to seek an enhanced sentence based on the habitual offender statute; therefore, the error "in no way prejudiced defendant's ability to respond to the habitual offender charge." *People v Walker*, 234 Mich App 299, 315; 593 NW2d 673 (1999). The trial court did not err in sentencing defendant as a third habitual offender.

Finally, defendant argues that the trial court's extensive leading and argumentative questioning of defense witnesses, especially defendant, indicated the trial court's bias against defendant and denied him a fair trial. However, defendant did not object to the questioning at trial. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error affected substantial rights resulting in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

A trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to make the interrogation and presentation effective for the ascertainment of the truth. MRE 611(a)(1). "The court may interrogate witnesses, whether called by itself or by a party." MRE 614(b). However, a defendant has a right to a neutral and detached judge and "a trial court's examination of witnesses may not 'pierce the veil of judicial impartiality.' " *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013), citing *People v Davis,* 216 Mich App 47, 50; 549 NW2d 1 (1996). The trial court "must not allow its views on disputed issues of fact to become apparent to the jury." *Cole v Detroit Auto Inter-Ins Exch*, 137 Mich App 603, 610; 357 NW2d 898 (1984).

Defendant argues that the trial court's questions to defendant and Henninger resulted in defendant indicating that he had been to Henninger's home, and knew of and had access to the guns that were in her home. The trial court did question defendant and elicited that defendant knew of two guns at Henninger's home, and that he had been in her bedroom (where the guns were stored). However, defendant had already testified that he had been to Henninger's home and knew she had guns. Defendant testified to not having entered Henninger's bedroom. However, when the prosecution questioned him of his knowledge of a pill bottle sitting on Henninger's nightstand in her bedroom, defendant said he recognized it and told the prosecutor that it was not his but rather, the other man she sometimes allowed to stay overnight. Thus, the trial court's questions clarified defendant's previous testimony. The trial court also asked several questions of Henninger, who explained that her daughter was able to access the guns one morning when Henninger asked for a gun to shoot at a coyote. However, Henninger had previously testified that she kept the three guns locked up in her bedroom. Moreover, it appears that it was a juror's question that the trial court relayed regarding how Henninger's daughter could have retrieved a gun from a locked bedroom.

The conduct of a trial judge can violate a defendant's "constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). A trial court must avoid assuming the prosecutor's role with advantages unavailable to the prosecution. *Davis*, 216 Mich App at 51; *People v Sterling*, 154 Mich App 223, 228; 397 NW2d 182 (1986). The trial court must "ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial." *People v Conyers*, 194 Mich App 395, 405; 487 NW2d 787 (1992); *Sterling*, 154 Mich App at 228. The test to determine whether a trial court's questions denied a defendant a fair trial is whether the questions " '*may* well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility, . . . and whether partiality *quite possibly could* have influenced the jury to the detriment of defendant's case." *Conyers*, 194 Mich App at 405,

quoting *Sterling*, 154 Mich App at 228, quoting *People* v *Redfern*, 71 Mich App 452, 457; 248 NW2d 582 (1976), citing *People* v *Smith*, 64 Mich App 263, 267; 235 NW2d 754 (1975) (emphasis in *Smith*).

The questions asked of Henninger, which may have contradicted her previous testimony that she kept the guns locked, were questions from the jury. The questions that the trial court asked of defendant and Henninger appear to have been intended to clarify testimony that had already been presented. That Henninger kept guns and ammunition in her room, and that defendant had been in her room, were established independent of the trial court's questions. Both Henninger and defendant testified that defendant had been to the house as her boyfriend, both testified that they knew guns were in the home, and defendant testified that ammunition was in the bedroom. Questions intended to clarify points or to elicit additional relevant evidence are not improper. *McDonald*, 303 Mich App at 437; *Conyers*, 194 Mich App at 404. Additionally, both defendant and Henninger told Detective Veltman that defendant had been residing with Henninger, and Detective Veltman observed defendant's vehicle at the home several times. Further, Detective Veltman found defendant there when he searched the residence and located the guns. The questions of the trial judge did not impeach Henninger or defendant and there is no indication that they influenced the jury to defendant's detriment because the questions simply clarified, and were consistent with, evidence previously introduced.

To determine whether a trial judge's conduct "pierced the veil of judicial impartiality," the Court evaluates several factors, "including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." *Stevens*, 498 Mich at 172. Here, the demeanor of the trial judge is indeterminate from the transcripts. The trial judge was active in questioning the witnesses, extensively at times, and not always necessarily in areas that were unclear. However, the questions were not only asked of defendant and Henninger; the trial judge also asked many questions of prosecution witnesses such as Detective Veltman and Department of Natural Resources Officer Steve Lockwood. Also, several questions were asked by the trial court of Marc Henninger (Henninger's brother), Amanda Carter and Michael Henninger (Henninger's father), a few in which the trial court interjected on the jury's behalf.[3] The trial court asked a few questions of one defense witness and one question during the testimony of four other defense witnesses. Thus, defendant's witnesses were not disproportionately questioned and as discussed, the trial court's questions mostly clarified and illustrated the evidence that was presented prior to the questioning. Finally, the trial court instructed the jury that its comments and questions were not evidence, and that the trial court should not influence the jurors because they were the judges of the facts and should decide the case based on the evidence. A jury is presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). In sum, the trial court's questioning of

---

[3] Amanda Carter is the estranged mother of Mr. Carter's daughter, a person that had been in an ongoing custody battle with Mr. Carter who testified at trial.

witnesses did not pierce the veil of judicial impartiality, demonstrate bias against defendant, or deny him a fair trial.

Lastly, defendant was not able to demonstrate that the information that resulted from the trial court's questions determined the outcome of his trial. As discussed, the evidence elicited by the trial court's questions pertained to evidence that had been admitted. Most notably, defendant had told Detective Veltman that his fingerprints would be on the gun belonging to his grandfather, which was found in Henninger's living room, because defendant had helped ensure the accuracy of the gun by "sighting" it and adjusting the scope for his brother when they hunted on the Hawkins Road house's property during the holidays.[4] Detective Veltman stated that while he was conducting the search defendant had informed him that two other guns were in the bedroom where he had placed them while he was remodeling the Hawkins Road house. Marc Henninger stated that in June of 2014, defendant had extended an invitation to go hunting with him, offering to provide a gun for him, while Michael Henninger also remembered an invitation to go hunting where the defendant told him that he could supply him with a gun and that he had a .308 rifle. Defendant denied to Detective Veltman having asked Henninger's family to shoot with him. Further, Department of Natural Resources Officer Lockwood stated that defendant had a combination firearm/bow permit for 2014 as well as firearm deer licenses for 2011, 2012, and 2013. The questions by the trial court did not impeach Henninger or the defendant, but rather, their testimony and their cross-examination testimony conflicted with each other. Accordingly, there was no plain error.

Affirmed.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[4] Defendant's brother, Edward Carter, stated that he had borrowed the .308 "bone collector" rifle to hunt on Thanksgiving at 615 Hawkins Road and had left it on the deck. Edward said that he did not see defendant touch the rifle. Henninger recalled that Edward hunted with the .308 rifle on the Friday after Thanksgiving.