*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CURTIS ECHOLS,

Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 345502
Ingham Circuit Court
LC No. 17-000847-FC

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted by jury of first-degree murder on theories of both premeditated murder, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve life in prison without parole. He appeals as of right, and for the reasons set forth in this opinion, we affirm defendant's convictions and sentence.

## I. BACKGROUND

This appeal arises from a homicide that occurred on July 7, 2017 at the America's Best Value Inn in Lansing, Michigan. At trial, it was uncontested that defendant checked into Room 172 at the America's Best Value Inn in Lansing at 7:04 a.m. on July 6, 2017. At 8:30 that evening, a Domino's employee delivered a pizza to defendant in Room 172. The employee testified that there was no one else in the room with defendant and the room did not appear disturbed. Video surveillance evidence established that at approximately 2:29 a.m. on July 7, 2017, defendant left his hotel room, drove a white car to the back-parking lot of the hotel, and parked the car next to a dumpster. At 2:45 a.m., approximately one hour prior to the victim's arrival at the hotel, defendant purchased a knife and duct tape from a nearby Meijer store. Defendant returned to his hotel room at approximately 2:51 a.m. after purchasing the knife. Defendant exchanged text messages with the victim between 3:00 a.m. and 3:30 a.m. At approximately 3:38 a.m., the victim arrived in a vehicle, identified as a sport utility vehicle (SUV), and entered defendant's hotel room. Approximately 30 minutes later, the hotel room door opened, a subject left and re-entered, and there was movement in the hotel-room window. Next, defendant left the hotel room and entered

the victim's SUV. The SUV proceeded to the back parking lot and was parked next to the white car. The white car then left the hotel area.

At approximately 12:00 p.m., hotel employees reported finding the victim's body underneath a sheet behind the door to the room defendant had rented. Police found the hotel room in disarray and discovered a significant amount of blood throughout the room, including on the walls, bed, floor, and door. An empty purse and cosmetics bag were discovered in the room near the body. A bloody knife, consistent with the knife purchased earlier by defendant at Meijer, was found approximately 15 feet from the hotel-room door. The victim's car was found parked in the back parking lot of the hotel; the latch of the driver-side door was broken.

The medical examiner determined that the victim died of multiple stab wounds and the manner of death was homicide. The medical examiner observed approximately 40 to 50 stab wounds on the victim's body, bruising and blunt-force trauma injuries, and defensive wounds to the victim's hands. The medical examiner testified that the victim's wounds were consistent with the knife purchased by defendant.

DNA (deoxyribonucleic acid) evidence collected from the knife was consistent with the victim's DNA. While defendant's DNA was not detected, his fingerprints were found on a duct-tape wrapper and plastic bottle collected from the hotel room. Further, the evidence indicated that, apart from the victim, defendant was the only person who accessed the hotel room between 7:00 a.m. on July 6, 2017, and 12:00 p.m. on July 7, 2017.

Police traced defendant's cell phone and found him in Indiana on July 7, 2017. Defendant's white car was found parked in Detroit on July 10, 2017. Investigators discovered the victim's debit card and public-assistance card during the search of defendant's car.

Defendant was convicted and sentenced as indicated above. This appeal ensued.

## II. ANALYSIS

On appeal, defendant does not argue that he killed the victim. Rather, he argues that the evidence produced at trial was constitutionally insufficient to support the conviction of premeditated murder on the elements of premeditation and deliberation. Defendant further argues that there was insufficient evidence at trial to support his conviction of felony murder. Defendant does not dispute that the evidence was sufficient to prove that he was guilty of second-degree murder. Consequently, defendant argues, this Court should vacate his convictions for first-degree and felony murder and remand this matter to the trial court for entry of a verdict of second-degree murder, and a resentencing of defendant.

This Court reviews challenges to the sufficiency of the evidence in a criminal trial de novo "to determine whether, when viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could have found all the elements of the charged crime to have been proven beyond a reasonable doubt." *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005).

> [T]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial.

> Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citations, brackets, and emphasis omitted).]

To be found guilty of first-degree premeditated murder, the prosecution must prove beyond a reasonable doubt that the murder was "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). The elements of first-degree murder are "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Premeditation and deliberation are legislative offspring and are to be construed in the light of the statutory scheme." *Oros*, 502 Mich at 240 (quotation marks and citation omitted). "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id.* (quotation marks, citations, and brackets omitted). "Since the distinguishing elements of first-degree murder ultimately resolve themselves into questions of fact, minimum standards of proof, if reasonably related to the circumstances which must be proved, will serve to preserve the distinction between first-degree and second-degree murder." *Id.* at 241 (quotation marks and citation omitted). "The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation, and that inference may be established from *all* the facts of the case." *Id.* (quotation marks and citation omitted). "In other words, when considering a sufficiency-of-the-evidence issue, the question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." *Id.* at 242 (quotation marks, citation, and brackets omitted).

"Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Id.* (citations omitted). "[I]t is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id.* The minimum time necessary to exercise a "second look" is not exact; however, it may only require a matter of seconds or a brief moment. *Id.* at 242-243. Further, "[t]he question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom be at a loss to determine it." *Id.* at 243 (quotation marks and citations omitted). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances. In other words, what constitutes sufficient evidence to support the elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in determining whether reasonable inferences may be made to support the fact-finder's verdict." *Id.* at 243-244 (quotation marks and citation omitted).

"Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Our Supreme Court has held that evidence of a struggle between the defendant and the victim can be evidence of premeditation and deliberation.

*Oros*, 502 Mich at 244. However, the "sheer number of stab wounds alone" does not establish premeditation and deliberation. *Id.* at 249.

Here, evidence was presented from which a rationale trier of fact could conclude beyond a reasonable doubt that defendant acted with premeditation and deliberation. The record reveals defendant purchased a knife and duct tape around 2:45 a.m., prior to the arrival of the victim. Additionally, the prosecution introduced evidence from defendant's cell phone which indicated after defendant purchased the knife he texted the victim, at 3:03 a.m. asking "Hey text me when you're on your way, okay." Further, record evidence produced at trial showed defendant moved his car to a back-lot dumpster area prior to the victim arriving, that defendant later parked the victim's car in the same area, from which jurors could have reasonably inferred that defendant moved the victim's car to conceal it and had planned to use his car to leave the crime scene when defendant parked his car. Indeed, video demonstrated that defendant left the motel in his car some time later.

In addition to that record evidence, we also note that video evidence showed the victim entering defendant's room at 3:38 a.m. and then, at approximately 4:04 a.m., the door of the defendant's room opened, revealing "something" exited and entered, then there was some movement near the window of defendant's room. Police testified there was no evidence that anyone other than defendant and the victim entered Room 172 on the morning of the homicide. Hence, on the basis of the evidence presented at trial, jurors could have reasonably inferred that defendant's actions leading up to the killing were deliberate and part of a murder plan.

Although we have recognized that the "sheer number of stab wounds alone" does not establish premeditation and deliberation, *Oros*, 502 Mich at 249, circumstances of the homicide support an inference of premeditation and deliberation. The victim was found in defendant's hotel room. The victim's body had multiple stab wounds, blunt-force trauma injuries, and possible defensive wounds. Evidence presented at trial indicated that the hotel room was found disheveled with a substantial amount blood splatters located on almost every wall, the bed, the door and throughout the floor. A lamp was found in the area between the bed and the nightstand; the shade was resting partially on the bed and the lamp was on the floor. Blood was observed on top of the nightstand and a cell phone that was plugged in. A knife with the victim's DNA was found approximately 15 feet from defendant's room, and was consistent with the knife purchased earlier that day by defendant. The investigation indicated that the victim's stab wounds were consistent with the knife purchased by defendant. From this evidence, jurors could reasonably conclude that there was a struggle between defendant and the victim, supporting an inference of premeditation and deliberation. *Oros*, 502 Mich at 244.

Hence, viewing the evidence in the light most favorable to the prosecution, the jury was presented with legally sufficient evidence from which it could conclude beyond a reasonable doubt that defendant was guilty of first-degree premeditated murder.

On appeal defendant also challenges the legal sufficiency of his conviction for felony murder. "The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated

in MCL 750.316(1)(b)." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). "[L]arceny of any kind" is a predicate offense enumerated in MCL 750.316(1)(b). The elements of larceny are: "(1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or personal property of another, (5) the taking must be without the consent and against the will of the owner." *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999) (quotation marks and citation omitted).

Defendant argues that the prosecution failed to prove that he intended to commit larceny of the victim's property at the time of the homicide or that he intended to permanently deprive her of the property. This Court has held that "[i]t is not necessary that the murder be contemporaneous with the enumerated felony. The statute requires only that the defendant intended to commit the underlying felony at the time the homicide occurred." *People v Brannon*, 194 Mich App 121, 125; 486 NW2d 83 (1992). "[A] murder that occurs during the uninterrupted chain of events surrounding the commission of the predicate felony is committed 'in the perpetration of' that felony for felony-murder purposes." *People v Gillis*, 474 Mich 105, 121; 712 NW2d 419 (2006). In general, "where the predicate crime underlying a charge of felony murder is part of a continuous transaction or is otherwise immediately connected with the killing, it is immaterial whether the underlying felony occurs before or after the killing." *People v Hutner*, 209 Mich App 280, 284; 530 NW2d 174 (1995).

Generally, the question regarding when a defendant's larcenous intent was formed is for the jury to decide. See *Brannon*, 194 Mich App at 126. "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010).

As previously indicated, there was motion in the hotel-room window after the victim arrived, and that the room was found disheveled, with blood throughout the room. The victim's body had multiple stab wounds, blunt-force trauma injuries, and possible defensive injuries, and an empty purse was found in close proximity to the victim's body. Evidence admitted at trial established that the victim's debit card and public-assistance card were found in defendant's vehicle. Based on the record, the jurors could have reasonably concluded there was a struggle between defendant and the victim over the victim's personal property.

In summary, under the circumstances, the jurors could have reasonably concluded that the homicide occurred during the unbroken chain of events surrounding a larceny of the victim's property. *Gillis*, 474 Mich at 121. The jurors also could have reasonably concluded that the larceny was part of a continuous transaction or was immediately connected with the killing. *Hutner*, 209 Mich App at 284. Finally, the jurors could have reasonably inferred from the circumstantial evidence that defendant took the victim's personal property with the intent to permanently deprive her of it.

Viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence from which it could conclude beyond a reasonable doubt that defendant was guilty of first-degree murder. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron